UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
-----------------------------------------------------------------------X
SHORELINE POOLS, INC.,

                              Plaintiff,                    Case No.: 3:24-cv-01762 (OAW)

     v.

LEGACY RENOVATIONS & POOL SERVICE, INC.,

                              Defendant.
-----------------------------------------------------------------------X

## DECLARATION OF DAVID LIONETTI IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

David Lionetti, declares the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

      1.     I am the President of Shoreline Pools Inc., ("Shoreline"), the Plaintiff in the above captioned matter.

      2.     I make this declaration, pursuant to Rule 7(b) of the Local Civil Rules of the United States District Court for the District of Connecticut, in support of Plaintiff's motion for a preliminary injunction. This motion seeks to enjoin Legacy Renovations & Pool Service, Inc. ("Legacy" or "Defendant") from continuing to misrepresent itself as Shoreline and/or as being affiliated with Shoreline, to compel the removal of all false and misleading content from its website and social media, to prohibit Legacy from engaging in deceptive communications with Shoreline's clients and/or suppliers, and to prevent the use, disclosure, or misappropriation of Shoreline's trade secrets, confidential business information, or proprietary data for the purpose of soliciting Shoreline's clients and/or leveraging Shoreline's supplier relationships.

      3.     Shoreline was founded by my father, L.F. ("Lou") Lionetti, in 1969 as a family-owned swimming pool construction and service company in Connecticut. Over time, it has grown

into a recognized leader in the pool construction, renovation, maintenance and service industry across the Northeast and especially in the New York Tri-state area.

4. I first joined Shoreline in or about May of 1970 and currently serve as President of the Company. I am also a member of Shoreline's Board of Directors. I currently oversee Shoreline's construction, renovation, service and maintenance divisions and own a majority (60%) of the issued and outstanding stock of the company.

5. From approximately 2005 to 2023, I held an equal percentage of ownership (approximately 30%) in Shoreline along with my two brothers, Mark Lionetti and Brian Lionetti.

6. On or about June 20, 2023, I acquired Brian Lionetti's interest in Shoreline, bringing my ownership interest to approximately 60%.

7. Mark Lionetti was employed by Shoreline until his termination on or about September 30, 2023. Mark Lionetti continues to own 30% of the issued and outstanding stock of Shoreline. A copy of Mark Lionetti's termination letter is annexed as **Exhibit "A"**.

8. My brother Mark Lionetti's son, David A. Lionetti, is also a former employee at Shoreline, having been employed by Shoreline since 2005 until he resigned from Shoreline on April 15, 2024.

9. I have since learned that, in or about the beginning of the fourth quarter of 2023, but probably much earlier, while David A. Lionetti was still employed by Shoreline and Mark Lionetti was still a substantial shareholder of the Company, they were planning to establish a competing pool service business.

10. I learned of their plans to compete against Shoreline through a review of emails sent from David A. Lionetti's Shoreline email account to his personal email account, which included a drafted a mission statement for "L&P Renovations," which they eventually incorporated

as Legacy. Attached hereto as **Exhibit "B"** is a true and correct copy of the email containing Legacy's draft mission statement.

11. Legacy was incorporated by Mark Lionetti under Florida law on March 22, 2024, with his son David A. Lionetti listed as a Vice President of the Company while David A. Lionetti was still employed by Shoreline. Attached hereto as **Exhibit "C"** is a true and correct copy of Legacy's Certificate of Incorporation.

12. Legacy was registered to do business in Connecticut on or about April 10, 2024. Attached hereto as **Exhibit "D"** is a true and correct copy of Legacy's registration to do business in Connecticut.

13. David A. Lionetti resigned from Shoreline on April 15, 2024, five days after registering Legacy to do business in the State of Connecticut. A copy of his letter of resignation is attached hereto as **Exhibit "E"**.

14. As owners of Shoreline, both Mark Lionetti and I were aware of our fiduciary duties to neither disclose nor use Shoreline's confidentiality proprietary information and/or trade secrets for our own personal benefit at the expense of Shoreline.

15. The list of the names of Shoreline's some 3,000+ current and former service clients, contact information, pool/spa specifications and pricing offered to Shoreline's customers was developed through years of effort and hard work and are essential trade secrets. Access to this information at Shoreline is and has always been strictly limited and protected.

16. Furthermore, the identity, contact information, needs and pricing offered to Shoreline's customers is not discoverable through public sources but rather is a by-product of years of industry trade practice and Shoreline's proprietary efforts to gather, sort, organize and analyze its customer's data.

17. Shoreline has also developed a network of suppliers and vendors, whose identities are not all commonly known in the marketplace. Through years of effort Shoreline has created vendor relationships and has developed relationships affording unique and confidential pricing. The identity of and information relating to Shoreline's suppliers/vendors and preferential pricing offers by way of volume discounts and flexible payment terms are essential trade secrets, upon which Shoreline's competitive advantage is, in part, based and access to this information at Shoreline is and has always been strictly limited and protected.

18. Given the value conferred to Shoreline by the trade secrets described above, Shoreline developed and oversaw a robust software system to protect our confidential business information and trade secrets.

19. The efforts to protect this confidential information included, but were not limited to, requiring usernames and passwords to access the company's databases and limiting access to that information to only a limited number of employees each having specific usernames and passwords.

20. If any competitor were to obtain Shoreline's customer lists, supplier information, or pricing details, they would derive significant economic value from that information.

21. Shoreline has a formal written Confidentiality Policy contained within the company's Employee Handbook, the relevant excerpt of which is attached hereto as **Exhibit "F"**.

22. Shoreline's Confidentiality Policy states, in relevant part, as follows:

> While employed by Shoreline, employees may be exposed to confidential and proprietary information regarding Shoreline. This information may include but is not limited to personal information regarding employees or customers of Shoreline and operational and financial information about Shoreline. During their employment with Shoreline and indefinitely thereafter, employees are required to hold and keep secret Shoreline's confidential and proprietary information (including Shoreline databases) and not disclose or use Shoreline's confidential and proprietary information, other than as required by applicable law or for the proper performance of duties and responsibilities to Shoreline.

23. Mark Lionetti, a former Officer and shareholder of Shoreline, and his son David A. Lionetti each had access to Shoreline's internal systems containing our customer list, supplier list and confidential pricing information.

24. At the time that Shoreline permitted Mark Lionetti and his son David A. Lionetti access to this confidential information, both Mark Lionetti and his son David A. Lionetti, knew that their access to this information came with a duty to maintain its secrecy and limit its use.

25. While employed by Shoreline, Mark Lionetti and his son David A. Lionetti, conspired to form Legacy to compete against Shoreline.

26. Upon information and belief, Mark Lionetti and his son David A. Lionetti misappropriated and stole Shoreline's private and confidential business information for the purpose of pursuing Shoreline service customers and to leverage Shoreline's vendor relationships to obtain preferential pricing and terms.

27. Since Legacy's incorporation on April 10, 2024, Legacy, through Mark Lionetti and his son David A. Lionetti, have actively solicited, signed, and acquired Shoreline's service clients, interfering with existing contracts and diverting Shoreline customers away from Shoreline to Legacy, and in doing so, caused significant harm to Shoreline's business relationships and reputation.

28. Upon information and belief, Legacy has diverted at least twelve (12) Shoreline service accounts since April 10, 2024 representing more than $100,000 of lost recurring annual revenue. Attached hereto as **Exhibit "G"** is a schedule listing based on my current knowledge, former Shoreline clients who are believed to have been improperly acquired by Legacy. The only way that Legacy could have known of the existence of these accounts was through Mark Lionetti and David A. Lionetti's employment with Shoreline. In many cases, Shoreline had signed

agreements with deposits and were forced to return money back to our clients in order to preserve our reputation in the community. In certain cases, deposits and other prepayments were returned to such customers, not by right but as a means to preserve Shoreline's reputation and good name in the communities it serves.

29. Shoreline has reason to believe, upon good authority, that Legacy is imminently planning to send out a targeted mass mailing campaign aimed at Shoreline using Shoreline's confidential information to further solicit and targeting all or a portion of Shoreline's service customers.

30. In addition to using Shoreline's Confidential and Proprietary Information, Legacy has been using deceptive practices in its solicitation of customers to induce them to enter into contracts with Legacy.

31. In that regard Legacy has misappropriated Shoreline's corporate history, its story, and its experience as a respected pool company. Specifically, Shoreline's website truthfully and accurately states:

> "Shoreline Pools was founded in 1969 as a small, family-owned swimming pool construction company in Connecticut. Our founder, Lou Lionetti, had a vision, that swimming pools should be an extension of one's home, a reflection of style, and a personal oasis. Lou believed that this vision hinged on delivering superior service and craftsmanship to every Shoreline Pools customer, and he settled for nothing but the very best.
>
> Today, Shoreline Pools stands by the very same values on which we were founded: service, craftsmanship, and tradition. There are no catalogs or templated array of pre-designed pools. Every swimming pool we build is custom designed for each client and constructed with the finest materials and craftsmanship to meet our exacting standards. Led by Lou's son, David Lionetti, our team is comprised of the most experienced and well-trained tradesmen in the industry. Over the past five decades, Shoreline Pools has built and serviced over 4,000 pools along the Northeast coast and within the New York Tri-state area – more than any swimming pool contractor or company in the region. Our award winning designs reach from Greenwich to Rhinebeck and as far as Martha's Vineyard, Nantucket, and the Bahamas."

32. I discovered false and deceptive claims made on Legacy's website whereby they stated that they "boast over 50 years in the industry and span three generations," and that "Mark and young Dave [have completed] over 3,000 pool projects." These statements are entirely baseless and false.

33. Shoreline, founded in 1969, is the company that spans three generations and has completed over 3,000 pools. Legacy, on the other hand, was incorporated on March 22, 2024, spans only two generations, and has not constructed a single pool nor completed anywhere near 3,000 pool projects. Legacy's intent in publishing these statements was to mislead the public as to Legacy's history and to falsely represent itself as Shoreline or being affiliated with Shoreline.

34. Additionally, as a pool repair, servicing, and restoration contractor, Legacy must ensure the proper licensing of its employees, which includes, in most instances, the contractor employing an individual with an SP-1 or SP-2 license.

35. Neither Mark Lionetti nor David A. Lionetti hold the necessary license to perform the pool repair and restoration services offered by Legacy as Mark Lionetti's SP1 license expired on October 31, 2023 and is shown on the State of Connecticut's licensing database website to be "Inactive." Attached hereto as **Exhibit "H"** is a true and correct copy of Mark Lionetti's licensing status as reflected by State of Connecticut's licensing database website.

36. It is my understanding that a failure to be properly licensed under Connecticut State Law constitutes in and of itself an unfair or deceptive trade practice.

37. Through Legacy's deceptive advertising and unfair trade practices Legacy has caused substantial injury to consumers by trading on Shoreline's reputation and creating the false impression that Legacy's history and reputation is the same as Shoreline's, when, in fact, it is not.

38. Legacy's continued use of Shoreline's history, reputation and trade secrets will enable them to further mislead Shoreline clients and confuse consumers, exacerbating the damage to Plaintiff's business and reputation.

39. Each day that Legacy is not enjoined from misappropriating Shoreline's identity and trade secrets, Shoreline stands to lose significant business opportunities and trust in the marketplace, which has taken Shoreline more than five decades to build.

40. Given Shoreline's unique, and "full service" platform as it relates to the pool construction, service/maintenance, and renovation industry, each Shoreline client may require different services over the course of its engagement period with Shoreline. The way Shoreline is able to tailor and deliver services to customers is to uniquely customize its offerings to meet the specific needs of each individual client, with revenue opportunities often arising from customers who have long standing continuous relationships with Shoreline. As such, any given client could result in a significant unforeseen future revenue opportunity for Shoreline.

41. Since Legacy's incorporation and Mark Lionetti's and David A. Lionetti's departure from Shoreline, Shoreline is aware of at least one instance where David A. Lionetti falsely held himself out as owning and still being affiliated with Shoreline to a Shoreline supplier.

42. On May 28, 2024, David A. Lionetti reached out to a longtime Shoreline supplier of construction materials, CPTnS, and affirmatively misstated the following: "I am the owner of Shoreline pools out of Stamford CT which we [sic] order many products. We have branched off to a new name called legacy [sic]." Attached hereto as **Exhibit "I"** is a true and correct copy of email correspondence between David A. Lionetti and CPTnS.

43. In that email, David A. Lionetti falsely misstated that Legacy was "a branch" of Shoreline to CPTnS in order, no doubt, to obtain preferential pricing and terms that Shoreline receives from CPTnS due to its longstanding business relationship with that supplier.

44. CPTnS is a long-time supplier for Shoreline, providing us with materials for pool construction and renovation. Our business relationship spans decades, during which Shoreline has secured discounted pricing and flexible payment terms based on the volume of our bulk orders and the significant business it generates for them.

45. The competitive advantage Legacy gains from unlawfully using Shoreline's trade secrets and misleading advertising has created a persistent and unfair distortion in the marketplace that is harming Shoreline. This includes a loss of market share, client confusion, and long-term damage to Shoreline's standing in the industry, which constitutes irreparable harm.

46. Given the serious nature of these violations, Shoreline has at various points, sent cease-and-desist letters to Legacy to demand that it stop passing off Legacy as a Shoreline 'spin off' and to stop using Shoreline's confidential business information. However, Legacy has refused to comply and is still using Shoreline confidential business information causing Shoreline irreparable harm to our reputation. Attached hereto as **Exhibit "J"** is a true and accurate copy of a cease-and-desist letter sent to Legacy when Shoreline discovered the deceptive e-mail exchange between David A. Lionetti and CPTnS.

Dated: New York, New York
November 12, 2024

By: _____
David Lionetti